**ROBERT J. ROSATI** #112006
e-mail: robert@erisalg.com
ERISA Law Group, LLP
6485 N. Palm Ave., Ste. 105
Fresno, CA 93704
Telephone:(559) 478-4119
Telefax:(559) 478-5939
Email: robert@erisalg.com

Attorneys for Plaintiff,
RONALD BURGE

UNITED STATES DISTRICT COURT FOR

DISTRICT OF ARIZONA

TUCSON DIVISION

| | |
|---|---|
| RONALD BURGE, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DECLARATORY RELIEF** |
| v. | |
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | |
| Defendant. | |

Plaintiff RONALD BURGE ("Plaintiff" or "Burge") alleges as follows:

## JURISDICTION

1.      Plaintiff's claim for relief arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. section 1132(a)(1) and (3).  Pursuant to 29 U.S.C. section 1331, this court has jurisdiction over this action because this action arises under the laws of the United States of America.  29 U.S.C. section 1132(e)(1) provides for federal district court jurisdiction of this action.

## VENUE

2.      Venue is proper in the District of Arizona because the acts and occurrences giving rise to Plaintiff's claims for relief took place in the Arizona in that Plaintiff was and is a resident of the City of Tucson, in the County of Pima, Arizona, when Defendant terminated his long-term

COMPLAINT

1  disability ("LTD") benefits and when it denied his final appeal of that decision.  Therefore, 29

2  U.S.C. section 1132(e)(2) provides for venue in this court.  Intradistrict venue is proper in this

3  Court's Tucson Division.

4  **PARTIES**

5      3.      Plaintiff  is, and at all times relevant hereto was, a participant, as that term is

6  defined by 29 U.S.C. section 1000(7), of the Reinalt-Thomas Corporation LTD benefits plan

7  ("The Plan") and thereby entitled to receive benefits therefrom.  Plaintiff was a participant

8  because he was an employee of Reinalt-Thomas Corporation ("Reinalt-Thomas") which

9  established The Plan to provide certain benefits, including LTD benefits, to its employees.

10     4.      Defendant issued Group Policy No. 000010119845 ("The Policy"), to Reinalt-

11 Thomas Corporation.  Lincoln thus insured The Plan, is obligated to provide all benefits claimed,

12 and acted on behalf of The Plan in all matters alleged herein, including making the decisions to

13 terminate Plaintiff's LTD benefits and deny his appeals of that decision.

14     5.      The Plan is employee welfare benefit plan organized and operating under the

15 provisions of ERISA, 29 U.S.C. section 1001 et seq.

16  **CLAIM FOR RELIEF**

17     6.      The Policy provides long-term disability benefits after an elimination period of 180

18 days, which, for a person under the age of 60 at the time the disability occurred, as was Plaintiff

19 herein, such benefits potentially could continue until the Normal Social Security Retirement Age,

20 which for Plaintiff is age 67.

21     7.      The Policy provides, in part, as follows:

22          A.      TOTAL DISABILITY or TOTALLY DISABLED is defined as:

23                  After the Own Occupation Period, it means that due to an Injury or

24                  Sickness the Insured Employee is unable to perform each of the Main

25                  Duties of any occupation which his or her training, education or experience

26                  will reasonably allow.

27

28

COMPLAINT

The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not** by itself, constitute Total Disability.

B.    MAIN DUTIES or MATERIAL AND SUBSTANTIAL DUTIES mean those job tasks that:

    1.    are normally required to perform the Insured Employee's Own Occupation; and

    2.    could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation.  It will apply the Act's standards, whether or not:

    1.    the Employer is subject to the Act; or

    2.    the Insured's Employee has requested such a job accommodation.

An Employer's failure to modify or omit other job tasks does **not** render the Insured Employee unable to perform the Main Duties of the job.

C.    Main Duties include those job tasks:

    1.    as described in the U.S. Department of Labor Dictionary of Occupational Titles; and

    2.    as performed in the general labor market and national economy.

D.    PARTIAL DISABILITY is defined as:

    1.    After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:

        a.    is unable to perform one or more of the Main Duties of any occupation which his or her training, education or experience will reasonably allow; or is unable to perform such duties full-time; and

        b.    is engaged in Partial Disability Employment.

**COMPLAINT**

1    8.    Burge is suffering from and disabled by the following conditions: chronic back

2 pain from unsuccessful surgeries; post-laminectomy syndrome; he had a stroke; he had seizures

3 when he had the stroke and he was in a coma for a few days; diabetes; peripheral neuropathy from

4 diabetes; hypertension; sleep apnea; morbid obesity; deep vein thrombosis; and blood clots in his

5 lungs.

6    9.    Plaintiff was employed by Reinalt-Thomas Corporation as a tire store Sales

7 Manager at the time he became disabled.

8    10.    Plaintiff last worked on March 4, 2012.

9    11.    By letter dated September 24, 2012, Lincoln informed Burge that he had

10 satisfied The Policy's 180 -day elimination period and would be paid LTD benefits

11 beginning September 1, 2012.

12    12.    By letter dated September 24, 2012, Lincoln approved Burge's LTD benefits

13 with an effective date of September 1, 2014.

14    13.    Lincoln obtained a review of Burge's records, dated September 18, 2014, by

15 Lucien J. Parrillo, M.D., MPH.  Dr. Parrillo concluded:

16    A.    The available clinical data does not provide a verifiable assessment of

17        the loss of functional ability to perform any occupation on a

18        consistent sustained basis.  Based on the documentation provided, the

19        claimant does have evidence of functional impairment as it relates to

20        his chronic medical conditions that would translate into medically

21        necessary restrictions/limitations.  However, these impairments are

22        not so severe as to warrant complete and total impairment from

23        working.

24    B.    The claimant has evidence of multiple lumbar surgeries (02/2010 and

25        04/2011) as well as chronic lower back pain and right leg radicular

26        pain consistent with post-laminectomy syndrome.  Further, the

27        claimant has a history of suspected seizure disorder that he was

28        admitted to the hospital for on 05/03/2012 - 05/16/2012 for which he

**COMPLAINT**

1   is actively being treated with an anti-convulsant medication, as well
2   as history of sagittal thrombosis, for which he is being treated with
3   lifelong Coumadin anti-coagulation therapy.  This puts the claimant at
4   additional risk for recurrent seizure or possible CVA if he were to
5   over-exert himself.  In addition, the claimant has additional ongoing
6   medical problems in the form of morbid obesity, diabetes,
7   hypertension, and sleep apnea, which contribute to a chronic
8   debilitated state and poor physical conditioning.  Overall, the medical
9   evidence does support impairment, but does not result in total
10   functional incapacity/physical impairment from gainful employment.
11   C.   Based on the documentation provided, I submit the following
12       restrictions/limitations are reasonable and appropriate for the claimant
13       to continue working:
14   The claimant can sit for a total eight hours per day, but he should not
15   sit for any longer than one hour continuously.  Standing/walking can
16   total a combined six hours per day, with each not lasting longer than
17   30 minutes continuously.  Lifting/carrying and pushing/pulling should
18   be restricted to 20 pounds occasionally and 10 pounds frequently.
19   Complex movements of the spine including climbing of stairs or
20   ladders, bending, twisting, crouching, kneeling, stooping and
21   crawling should be performed occasionally.  Working from heights,
22   including ladders and scaffolds, should be totally restricted.  Use of
23   the upper extremities for overhead work, use of the arms at waist
24   level and below waist level can be performed frequently.  Use of the
25   hands for reaching, grasping, handling, pinching, and keyboarding is
26   unrestricted.  Environmental restrictions in terms of noise,
27   temperature, or air-quality are not necessary.  The claimant is capable
28   of maintaining a full-time work schedule with these restrictions/

**COMPLAINT**

1  limitations in place as of 03/05/2012 forward and the restrictions/
2  limitations should be considered ongoing and indefinite.

3      14.    On September 23, 2014, a Vocational Assessment was completed by
4  Lincoln's Diane Rowe "based upon an independent peer review completed on 9/4/2014,"
5  and concluded that Burge could perform sedentary and light physical capacity level jobs,
6  including:

7          (1)    Manager, auto specialty services, his own occupation;

8          (2)    Manager, customer service;

9          (3)    Manager, department; and

10         (4)    Superintendent, maintenance.

11     15.    By letter dated September 30, 2014, Lincoln terminated Plaintiff's LTD
12 Benefits effective September 1, 2014.  The letter invited Burge to appeal that decision.

13     16.    By letter dated March 9, 2015, Plaintiff submitted, through counsel, an
14 appeal.  The appeal consisted of his two page sworn declaration, a 70-page appeal letter
15 written by his counsel, and several exhibits in support of his LTD claim.  The letter
16 summarized Burge's medical records and medications; explained that Lincoln failed to
17 provide its claims and appeals standards and criteria; explained that Lincoln terminated
18 Burge's benefits for financial reasons; explained that Lincoln failed to reasonably consider
19 pain, fatigue, medical side effects, and mental clouding as disabling conditions and failed
20 to conduct a whole person evaluation, or examine Burge; explained that Burge's condition
21 did not improve and that Dr. Parrillo's opinions are medically unsound; explained Lincoln
22 asked Dr. Parrillo the wrong questions and provided questions for Dr. Parrillo;
23 demonstrated that Lincoln's vocational assessment was unsupported and incorrect.

24     17.    By letter dated April 9, 2015, Lincoln partially responded to Burge's appeal
25 with reference to Burge's claim  that Lincoln withheld documents necessary for a full and
26 fair review, it wrote:

27         A.    "To address the above requests, Lincoln Financial Group does not
28               provide the following information, or it is not available.

**COMPLAINT**

-6-

1          *      Claims procedures

2          *      Claims handling manual

3          *      Policy and procedure manuals

4          *      Appeal handling and procedure processes

5          *      Guidelines pertaining to disability claims resolutions

6          *      Guidelines for determining need for an Independent Medical

7                  Exam (IME) - there are none as it is handled case by case

8          *      Disability claims administration training

9                  document/tapes/videos

10         *      Copies of any or all surveillance videos or investigatory

11                 reports - there are none

12         *      Documentation of any payments made to physicians who

13                 reviewed the claimants medical records - we do not have this

14         *      Payments made to any third party reviewer or non-treating

15                 physician (for any timeframe)

16         *      Negative claim decision frequency for any third party reviewer

17                 or non-treating physician (for any timeframe)

18         *      Bonus-financial information

19         *      Internal oversight information

20         *      Internal claim decision date for the past 5 years (or any

21                 timeframe)

22     B.    As to the appeal letter's argument that Lincoln's reviewing doctors

23             are not independent, the letter responded "Lincoln utilizes the

24             services of multiple third party vendors to assist in the process of

25             obtaining external, independent medical reviews of claimant's

26             medical records.  Such vendors have been determined to be reputable

27             and reliable based upon Lincoln's investigation.  Lincoln relies upon

28             these vendors to identify and provide qualified medical professionals

**COMPLAINT**

1   who have been screened and identified by the vendors to be quality,
2   unbiased professionals.  This process removes Lincoln from directly
3   selecting any particular medical professional, and Lincoln does not
4   directly retain such professionals."

5       C.    As to the appeal letter's argument that Lincoln failed to perform a
6   proper Transferable Skills Analysis (TSA), the letter asserted "The
7   Vocational Assessment internal electronic referral was addresses (sic)
8   in Allison McAbee's March 2, 2015 letter to you.  The referral was in
9   the previously provided claim file, and she also included a separate
10  copy of the vocations referral in her letter.

11      D.    As to the appeal letter's argument that Lincoln asked the wrong
12  questions of Dr. Parrillo and in response to questions asked to him,
13  Lincoln responded "Lastly, you referenced Dr. Parrillo, the
14  Independent Physician Reviewer who reviewed your client's file on
15  09/18/2014.  You indicated that we asked the wrong questions and
16  requested that we supply Dr. Parrillo with a list of approximately 100
17  specific questions that you proposed.

18      Under ERISA Independent Review, our review will be competed
19  independently.  Therefore, we will not be sending Dr. Parrillo these
20  questions."

21      18.    In partial response to his first appeal, Lincoln also sent Burge to an
22  "Independent Medical Examination" with Dr. Raymond Schumacher.  Dr. Schumacher
23  issued a report dated May 19, 2015 in which he concluded:

24      A.    "This man clearly suffers from morbid obesity. . . . There is clinical
25  evidence of right S1 radiculopathy, which appears to have been
26  electrodiagnostically verified, along with peripheral neuropathy.

27      B.    This man unequivocally does have physical impairments.  I have not
28  been asked to assess a permanent impairment percentage, a procedure

**COMPLAINT**

in which I am commonly involved, but I do note that this man has
medical-consensus-recognized permanent impairments in regard to
the condition of the lumbar spine, in regard to the condition of
presumed bilateral lower extremity post-phlebitic syndrome.

C.   [I]t is my preference to impose activity restrictions only upon
objective medical documentation of a diagnosis creating substantially
increased risk and severity of an adverse outcome in the absence of
such restrictions, and to recognize functional limitations only when
there is, again, objective medical evidence of a diagnosis that would
likely create such functional limitations.  Based upon the available
objective medical evidence, I do not find this man to be a good
candidate for lower-extremity-intensive physical exertions, such as
running, jumping, walking on uneven surfaces, or ladder climbing.

D.   By way of disclaimer, please note that lack of medical activity
restrictions, or lack of functional limitation recognition, based upon
documented diagnoses, should not be taken as medical certification of
ability to perform any specific task, and also should not be taken as
advice by Burge, to the effect that he should attempt activities against
which I have not imposed restrictions or regarding which I have not
recognized functional limitations.  The actual capacity to perform a
specific occupational activity is not a subject which is realistically
within the realm of a medical determination.

19.   Based on Dr. Schumacher's IME report, Lincoln retained Dr. Ephraim
Brennan to express opinions about Burge's work capacity.  In his records review report of
June 11, 2015, Dr. Brennan concluded:

A.   In my medical opinion, the claimant's impairments would be
decreased ability to lift and carry, decreased ability for prolonged

**COMPLAINT**

-9-

sitting as well as decreased ability for prolonged standing and walking.

B.   In my medical opinion, from 09/30/2014, and beyond the claimant would have restrictions and limitations of no lifting and carrying greater than 20 pounds occasionally and 10 pounds frequently.  The claimant can sit up to 8 hours a day up to 1 hour at a time with the ability to change position as needed for comfort.  The claimant can stand and walk each up to 4 hours total in an 8 hour day, up to 30 minutes at a time needing a 2 minute break to stop and stretch.  The claimant can occasionally reach below waist level, crouch and crawl as well as occasionally go up and down stairs as well as a ladder.  The claimant has no restrictions while sitting to reach at a desk level or waist level.  The claimant can frequently reach above shoulder level and below waist level if needed.

C.   In my medical opinion, no the restrictions and limitations placed upon the claimant by the attending provider are not reasonable or consistent with the documentation.  Dr. Musicant stated the claimant cannot work.  I do not agree with this assessment.

D.   In my medical opinion, no.  The pain is subjective, but from a clinical standpoint, in my opinion, the claimant is able to work with the restrictions and limitations as stated due to the fact that the claimant's disk protrusion is significantly resolved or decreased since the surgery as well as on 04/07/2011, there is no recurrent radiculopathy or significant stenosis on examination or diagnostic testing."

20.   By letter dated June 22, 2015, Lincoln denied Burge's first appeal.

21.   By notice dated July 20, 2015, the Social Security Administration found Burge to be totally disabled.  This notice was submitted to Lincoln.

**COMPLAINT**

22.     By letter dated December 4, 2015, Plaintiff submitted his second appeal, as required by The Policy.  In that appeal he: provided updated medical information; explained that Lincoln failed to provide supporting documentation for it second vocational review; explained that Lincoln failed to produce its claims practices and procedures, and in so doing, failed to provide Burge with a full and fair review.

A.     "In Burge's initial appeal, at pages 11-12, he asked for specific documents, including:

1.     The appeals handling process document as currently updated.

2.     The process and procedure documents as currently updated.

3.     Standard operating procedures and criteria utilized by Lincoln.

4.     Claim standards about any occupation reviews.

5.     Claim standards abut the meaning of "clinical data" or "verifiable assessment" as referenced in the questions to Dr. Parrillo.

6.     Claim standards about how to evaluate comorbid conditions.

7.     Claims standards about obtaining current medical records.

8.     Claims standards about evaluating the disabling effects of pain.

9.     Claims standards about evaluating the disabling effects of fatigue.

10.    Claims standards of medications.

11.    The policy's definition of main duties or material or substantial duties permits Lincoln to apply Americans with Disability Act (ADA) standards concerning reasonable accommodations.  I would like Lincoln's claim standards about how this is done.  I have to tell you that I have represented both plaintiffs pursuing ADA claims and defendants defending ADA claims.  The ADA standards on accommodations are highly case specific

**COMPLAINT**

and extremely complex.  Since your denial letter claims that Burge can perform a variety of other occupation and since it also recognizes that Burge's physical limitations are significant and therefore he has restrictions and limitations, I need to now how Lincoln applies the ADA criteria which are incorporated by reference into the policy.  In all due candor, I think the incorporation by reference of ADA standards makes the policy impossibly ambiguous because the ADA standards for accommodations are so fact specific.  It would be impossible to apply these criteria consistently without written claim standards or criteria - - and therefore I would expect Lincoln to have such and to provide them to me.

B.    In Lincoln's review of Burge's appeal, it noted that it could address most of the issues, but noted that if Lincoln did not address each question, we would assume it agreed.  Lincoln's case manager, "SMMCSHA" wondered "Do these statements in the letter truly indicate that if we do not address each and every question; then it can be held bound that we agree with the attorney and his medical statements?"

C.    The second appeal also explained:

On October 19, 2015, Burge underwent an Earning Capacity Evaluation from Vocational Diagnostics, performed by Aubrey Corwin of Vocational Diagnostics Incorporated.  Ms. Corwin ultimately opined that, in part: "I disagree with the above statement that Burge is able to perform his own occupation, which the report classified as "light."  Based on the job description from Discount Tire Co. And Burge's report of his job duties. . . . his job is more appropriately classified as "heavy" or "very heavy."  Given the above

COMPLAINT

work restrictions, it is clear that Burge is unable to return to his prior occupation with Discount Tire or a similar occupation.  Burge's physical limitations, work restrictions, and pain complaints significantly impact his ability to work in any capacity."

* * * *

"In the Vocational Assessment Transferable Skills Analysis of Lincoln Insurance Company, dated September 23, 2014, job titles and mean national wages for such are provided as being appropriate for Burge.  However, there is no information related to the availability of these jobs in Burge's geographical labor market or wages specific to such.  In addition, specific job titles and specific industries where these job titles exist are also lacking.  Further, there is no information to suggest whether these jobs are available in significant numbers an on a full-time basis."

"I would also disagree with the use of the mean wage data, Median wage data is also seen as a more appropriate figure which is the midpoint of a distribution, such that there is an equal probability of failing above or below it, which does not artificially inflate earnings as using the mean can do.  However, given that Burge has never worked in these capacities and even if he were qualified for th hobs noted, both physically and vocationally, he would earn wages closer tot he entry-level percentiles, typically in the 25%th range."

* * * *

"As noted above, Burge is required to frequently change positions due to his disability.  Burge can only stand 50% of his day and must take a break after 30 minutes of standing.  He can only sit for one hour at a time.  The possibility of working in the managerial positions noted in the Vocational Assessment Transferable Skills Analysis of Lincoln

**COMPLAINT**

1  Insurance Company is not support assuming such functional

2  restrictions.  Breaks based on the rigid scheduled outlined by Dr.

3  Brennan would not be guaranteed in these types of jobs."

4  "Burge's demonstrated physical capacities would make it difficult to

5  perform jobs classified as even "Sedentary."  While some jobs may

6  allow an individual to sit and stand throughout the workday, the need

7  to change positions and move around every 30 minutes is going to

8  impact productivity and pace of the job, thus, precluding him from

9  any type of work identified in the Vocational Assessment

10  Transferable Skills Analysis of Lincoln Insurance Company, dated

11  September 25, 2014."

12  "Given Burge's pain complaints, demonstrated pain behaviors in the

13  clinical interview, vocational testing results and physical limitations,

14  Burge is precluded from working in any type of job in the open and

15  competitive labor market.  Burge is unable to return to full-time

16  employment for which he is reasonably fitted for by training,

17  education, experience, age, physical and mental capacity."

18  "Burge's labor force participation has been reduced from full-time to

19  zero.  Burge's worklife expectancy would have been to age 64.71. . . .

20  However, given his disability, this has ended."

21  23.    By letter dated January 4, 2016, Lincoln denied Plaintiff's second appeal.

22  24.    Plaintiff has exhausted all administrative remedies required to be exhausted

23  by the terms of The Policy and by ERISA.

24  25.    At all times mentioned herein Plaintiff was, and continues to be, totally

25  disabled under The Policy's definition of totally disabled and therefore entitled to benefits

26  under the terms of The Policy.

27  ///

28  ///

**COMPLAINT**

26.   ERISA section 503, 29 U.S.C. section 1133 provides:

"In accordance with regulations of the Secretary, every employee benefit plan shall–

(1)   provide adequate notice in writing to any participant, beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reason for such denial, written in a manner calculated to be understood by the participant, and

(2)   afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

27.   Defendant was required to provide Plaintiff a full and fair review of his claim for benefits pursuant to 29 U.S.C. §1133 and its implementing Regulations. Specifically:

A.   29 U.S.C. §1133 mandates that, in accordance with the Regulations of the Secretary of Labor, every employee benefit plan, including defendants herein, shall provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant and afforded a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by an appropriate named fiduciary of the decision denying the claim.

B.   The Secretary of Labor has adopted Regulations to implement the requirements of 29 U.S.C. §1133. These Regulations are set forth in 29 C.F.R. §2560.503-1 and provide, as relevant here, that employee benefit plans, including Defendant, shall establish and maintain reasonable procedures governing the filing of benefit claims, notifications of benefit determinations, and appeal of adverse benefit determinations and that such procedures shall be deemed reasonable only if:

**COMPLAINT**

      i.      Such procedures comply with the specifications of the Regulations.

      ii.     The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, The Policy provisions have been applied consistently with respect to similarly situated claimants.

      iii.    Written notice is given regarding an adverse determination (i.e., denial or termination of benefits) which includes: the specific reason or reasons for the adverse determination; with reference to the specific plan provisions on which the determination is based; a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of The Policy's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following a denial on review; if an internal rule, guideline, protocol, or similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

COMPLAINT

iv. The Policy is required to provide a full and fair review of any adverse determination which includes:

    a. That a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

    b. A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information: (1) was relied upon in making the benefit determination; (2) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (3) demonstrates compliance with the administrative processes and safeguards required pursuant to the Regulations in making the benefit determination; or (4) constitutes a statement of policy or guidance with respect to The Policy concerning the denied benefit without regard to whether such statement was relied upon in making the benefit determination.

    c. The Regulations further provide that for a review that takes into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

COMPLAINT

-17-

d.   The Regulations further provide that, in deciding an appeal of any adverse determination that is based in whole or in part on a medical judgment that the appropriate named fiduciary shall consult with a healthcare professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

e.   The Regulations further require a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the Plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal nor the subordinate of such individual.

f.   The Regulations further provide that a healthcare professional engaged for the purposes of a consultation for an appeal of an adverse determination shall be an individual who is neither the individual who was consulted in connection adverse benefit determination which was the  subject of the appeal nor the subordinate of any such individual.

28.   Defendant  denied Plaintiff a full and fair review of his claims for benefits as follows:

A.   Lincoln apparently has claims procedures which contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, The Policy

**COMPLAINT**

-18-

provisions have been applied consistently with respect to similarly situated claimants but refused to provide them to Burge.

B.   Lincoln, when terminating Plaintiff's claim for LTD benefits and did not provide a description of the additional material or information necessary for Plaintiff to perfect his claim or an explanation of why such material or information was necessary.

C.   Defendant failed and refused to provide all relevant documents to Plaintiff for use in his appeals.  Specifically, despite Plaintiff's written request for all relevant records submitted prior to the submission of his appeal, Lincoln withheld relevant records, including, but not limited to:

(i)   Claims procedures as specified in Paragraph 27;

(ii)  Statements of policy or guidance with respect to The Policy concerning the denied benefit without regard to whether or not the statement was relied upon in making the benefit determination, as specified in Paragraph 27.

D.   Defendant did not consider the comments and documents submitted in support of Plaintiff's appeals.

E.   Defendant otherwise violated the Regulations.

29.   The Policy reserves discretion to Lincoln.  Therefore, this Court is required to review this case for abuse of discretion.  However, this Court should review Defendant's decision with limited deference because:

A.   Lincoln is both the administrator and the funding source for The Policy, and therefore has a conflict of interest.

B.   As explained in Plaintiff's first appeal, Lincoln has experienced an economic downturn and therefore has financial self-interest in terminating Plaintiff's claim.

**COMPLAINT**

C.    Lincoln failed to comply with ERISA's procedural requirements regarding benefit claims procedures and full and fair review of benefit claim denials as set forth in Paragraphs 26 and 27;

D.    Lincoln's decision-making was influenced by its financial conflict of interest.

30.    Defendant's termination of Plaintiff's LTD benefits was arbitrary and capricious, an abuse of discretion, and a violation of the terms of The Policy.

31.    An actual controversy has arisen and now exists between Plaintiff and Defendant with respect to whether Plaintiff is entitled to LTD benefits under The Policy.

32.    Plaintiff contends, and Defendant disputes, that Plaintiff is entitled to LTD benefits under the terms of The Policy because Plaintiff contends, and Defendant disputes, that Plaintiff is totally disabled.

33.    Plaintiff desires a judicial determination of his rights and a declaration as to which party's contention is correct, together with a declaration that Defendant is obligated to pay long-term disability benefits of The Policy, retroactive to the first day his benefits were terminated, until and unless such time that Plaintiff is no longer eligible for such benefits under the terms of The Policy.

34.    A judicial determination of these issues is necessary and appropriate at this time under the circumstances described herein in order that the parties may ascertain their respective rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote judicial efficiency.

35.    As a proximate result of Defendant's wrongful conduct as alleged herein, Plaintiff was required to obtain the services of counsel to obtain the benefits to which he is entitled under the terms of The Policy. Pursuant to 29 U.S.C. section 1132(g)(1), Plaintiff requests an award of attorney's fees and expenses as compensation for costs and legal fees incurred to pursue Plaintiff's rights.

///

///

**COMPLAINT**

1    WHEREFORE, Plaintiff prays judgment as follows:

2       1.      For declaratory judgment against Defendant, requiring Defendant to pay

3    long-term disability benefits under the terms of The Policy to Plaintiff for the period to

4    which he is entitled to such benefits, with prejudgment interest on all unpaid benefits, until

5    Plaintiff attains the age of 67 years or until it is determined that Plaintiff is no longer

6    eligible for benefits under the terms of the Policy.

7       2.      For attorney's fees pursuant to statute against defendant.

8       3.      For costs of suit incurred.

9       4.      For such other and further relief as the Court deems just and proper.

10

11   DATED:  February 9, 2016            ___*/s/ Robert J. Rosati*_____
                                         ROBERT J. ROSATI
12                                       Attorney for Plaintiff,
                                         RONALD BURGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**